UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

IAN HAREWOOD,

              Petitioner,

    -vs-

JAMES CONWAY,

             Respondent.

**DECISION AND ORDER**
**No. 08-CV-00793T**

_____

## I. Introduction

Petitioner Ian Harewood ("Petitioner"), through counsel, has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered January 30, 2002, in New York State, County Court, Monroe County, convicting him, upon a jury verdict, of Murder in the Second Degree (N.Y. Penal Law ("Penal Law") § 125.25 [3] (felony murder)) and two counts of Attempted First Degree Robbery (Penal Law §§ 110.00, 160.15 [2], [4]).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II. Factual Background and Procedural History

The conviction arises from events that occurred on August 29, 2000 in the City of Rochester, New York. At approximately 10:00 p.m. on that date, Officer Paul Lucci ("Officer Lucci") of the Rochester Police Department ("RPD") was dispatched to the area of

Thomas and Wilkins Streets regarding a reported shooting. Upon his arrival, Officer Lucci was directed by various bystanders to the driveway of 133 Thomas Street. There, he discovered the body of Porfirio Javier ("Javier" or "the victim") lying in a pool of blood next to a parked car. According to the medical examiner, Javier was killed by a single bullet wound to the side of his head fired from a few inches to three feet away. Trial Trans. [T.T.] 220-221, 243-251, 364-378.

Shortly thereafter, additional officers arrived at the scene and entered 133 Thomas Street. The police discovered a shotgun in the living room and a wallet containing the driver's license of William Brooks ("Brooks") on a table in the front bedroom. Brooks' fingerprints were recovered from a bottle and a can found in the house. T.T. 252-253, 277-280, 354.

About four months later, on December 21, 2000, narcotics investigators executed a search warrant at 6 Rodenbeck Place in the City of Rochester, where they seized a handgun, cocaine, and currency. Petitioner, who was at the home at the time the warrant was executed, was arrested and transported to the police station. T.T. 460-463.

While at the police station, Petitioner spoke to RPD Investigator Ronald Reinstein ("Investigator Reinstein"). Investigator Reinstein, who was assigned to the homicide unit, was involved with the investigation relating to the Thomas Street

homicide.   Prior to the interview, Investigator Reinstein told Petitioner, who was waiting for him in an interview room, that he would be with him shortly, to which Petitioner responded, "I have something better than this for you."  When Investigator Reinstein returned to the interview room, he obtained a waiver of Petitioner's <u>Miranda</u> rights and then asked Petitioner what he meant by his comment.  Petitioner indicated that he had information about the murder of "the Spanish guy on Thomas Street."  Investigator Reinstein asked Petitioner if he meant "the one that is in front of your drug house?"  Petitioner answered in the affirmative.  T.T. 409-416.

Petitioner then asked Investigator Reinstein if he would be able to do anything for him with respect to the federal drug charges for which he was in custody.  Investigator Reinstein indicated that he could not, but that it would be beneficial to Petitioner to disclose any other information he had regarding the Thomas Street homicide.  Petitioner then gave oral and written statements to police regarding said homicide.  T.T. 416-419.

According to Petitioner's statements, he sold drugs out of a house on Thomas Street.  He bought drugs from Javier, one of whose suppliers was a man named John Polanco ("Polanco").  Petitioner believed that Polanco owed him $4,000 because Polanco had sold him drugs that were "cut too much."  As a result, Petitioner planned to recoup his perceived loss by ordering drugs from Polanco over his

cell phone and then have Brooks rob Polanco when Polanco arrived with the drugs. Petitioner gave Darius Brown ("Brown") a gun to give to Brooks to accomplish the robbery of Polanco. After robbing Polanco, Brooks was to meet Brown, who was to be parked nearby. Petitioner explained that, after about forty-five minutes, Polanco did not appear at 133 Thomas Street and so he determined that the he and Brooks would rob Polanco later. Petitioner left Brooks behind in the yard at 133 Thomas Street in the event Polanco showed up, and he and Brown went to Wilkins Street to "roll dice." Petitioner subsequently sent Brown back to 133 Thomas Street to tell Brooks to go into the house. When Brown arrived back at 133 Thomas Street, he was told by various individuals in the neighborhood that there was a dead body in the driveway. Brown then went back to get Petitioner. He and Petitioner returned to 133 Thomas Street together and were told by Herman Lewis ("Lewis") that there was a dead body in the yard. Petitioner recognized the car in the driveway as Javier's and thought to himself that Brooks had shot the wrong person. When police arrived at the scene shortly thereafter, Petitioner and Brown left the scene and went to Brooks' mother's house where Brooks told Petitioner that he went to rob the man who arrived at the house who had asked for Petitioner, the man had grabbed the gun, and it went off. T.T. 417-436.

Petitioner was indicted with Brooks (but tried separately) and charged with one count of murder in the second degree (Penal Law §§

125.25 [3]; 20.00), and two counts of attempted robbery in the first degree (Penal Law §§ 160.15 [2], [4]; 110.00; 20.00). See Resp't App. B at 5-6. A jury trial was conducted from September 24-27, 2001 before the Hon. John J. Connell. Petitioner did not testify at trial and called no witnesses on his behalf.

Lewis, who testified for the prosecution, stated that he saw Petitioner shooting dice on Wilkins Street on the evening of August 29, 2000. He testified that, later that evening, he spoke with Brooks who told him that "he had gotten into trouble and did something." Lewis testified that Brooks explained to him that he thought he shot someone at Thomas and Wilkins Streets and that he had a gun with him. Lewis testified that he then went to 133 Thomas Street where he saw a man lying on the ground in the driveway. He testified that individuals from the neighborhood started to come around, including Petitioner and Brown. He testified that when he told Petitioner someone had been shot, Petitioner stated that "it was messed up." T.T. 384-391.

Petitioner was found guilty as charged. T.T. 591-592.

Prior to sentencing, Petitioner moved, pursuant to N.Y. Crim. Proc. Law ("C.P.L.") § 330.30, to set aside the verdict on the ground that the prosecutor failed to disclose certain Brady material. See Resp't App. B at 131-136. Following a hearing, the trial court denied Petitioner's motion on the ground that Petitioner failed to demonstrate that the prosecutor was aware of

the Brady material.  See Hr'g Mins. [H.M.] of 12/18/01; Resp't Ex.
B at 142-146.

Petitioner was sentenced to an indeterminate term of
imprisonment of twenty years to life on the murder count and
determinate ten year terms of imprisonment on each of the attempted
robbery counts, all to run concurrently.  Sentencing Mins. [S.M.]
19-20.

The Appellate Division, Fourth Department ("Fourth
Department") unanimously affirmed the judgment of conviction.
People v. Harewood, 34 A.D.3d 1254 (4th Dep't 2007) (Resp't App.
E.); lv. denied, 8 N.Y.3d 846 (2007) (Resp't App. G).

Petitioner subsequently filed a motion for a writ of error
coram nobis in the Fourth Department, which was summarily denied on
July 3, 2008.  People v. Harewood, 53 A.D.3d 1123 (4th Dep't 2008)
(Resp't App. I); lv. denied, 11 N.Y.3d 832 (2008) (Resp't App. K).

This habeas corpus petition followed, wherein Petitioner seeks
relief on the following grounds: (1) the evidence was legally
insufficient; (2) the prosecution was improperly permitted to
change its theory of prosecution; (3) ineffective assistance of
trial counsel; and (4) ineffective assistance of appellate
counsel.  See Pet. ¶ 12, Grounds One-Four (Dkt. #1); Mem./Br.
Points I-IV (Dkt. #2); Reply Mem. [Reply] (Dkt. # 20).

## III. General Principles Applicable to Habeas Review

### A.    The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the

state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

### B. Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1)(A); <u>see, e.g.</u>, <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999); <u>accord, e.g.</u>, <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir.1994), <u>cert. denied</u>, 514 U.S. 1054 (1995)." The exhaustion requirement is not satisfied unless the federal claim has been "fairly presented" to the state courts. <u>Daye v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), <u>cert. denied</u>, 464 U.S. 1048 (1984).

## IV. Merits of the Petition

### 1. Petitioner's Claim that the Evidence was Legally Insufficient is Meritless

Petitioner argues that the evidence was legally insufficient to establish his guilt beyond a reasonable doubt. <u>See</u> Pet. ¶ 12, Ground One; Mem./Br., Point I; Reply, 3-7. In particular, he argues that there was legally insufficient evidence to show that an attempted robbery occurred and that there was insufficient proof to show that Petitioner was an accessory to the crimes charged. <u>See</u> Mem./Br., Point I. Petitioner raised this claim on direct appeal,

and the Fourth Department rejected it on the merits, finding that the evidence was legally sufficient to support his conviction. Harewood, 34 A.D.3d at 1254. This claim is meritless.

A petitioner who challenges the sufficiency of the evidence to support his conviction faces a "very heavy burden." Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995). The standard to be applied on habeas review when the claim of legally insufficient evidence is made is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). In making this assessment, the court must "credit every inference that could have been drawn in the state's favor . . . whether the evidence being reviewed is direct or circumstantial." Reddy v. Coombe, 846 F.2d 866, 869 (2d Cir.), cert. denied, 488 U.S. 929 (1988).

As the Supreme Court has instructed, this Court has reviewed the evidence in the light most favorable to the prosecution, and construed in its favor all permissible inferences arising from the evidence. There was ample evidence upon which a rational trier of fact could have found beyond a reasonable doubt that Petitioner's conduct established the essential elements of the crimes of

attempted first degree robbery[1] and felony murder,[2] under a theory

of accomplice liability.[3]  The evidence at trial established the

following:  that Petitioner was a drug dealer who sold drugs out of

a house on Thomas Street; that he purchased drugs from Javier, who

"middled" drugs from Polanco; that, because some of the drugs he

bought had been "cut too much," Petitioner felt that he was owed

$4,000; that, in order to recover his perceived loss, Petitioner

formulated a plan to order drugs from Polanco and, when Polanco

showed up at 133 Thomas Street with the drugs, Brooks, armed with

a gun provided to him by Petitioner, would rob Polanco; that, when

Javier arrived at Thomas Street and asked for Petitioner, Brooks

---

[1]     Under New York law, "[a] person is guilty of an attempt to commit
a crime when, with intent to commit a crime, he engages in conduct which tends
to effect the commission of such crime."  Penal Law § 110.00.

        Penal Law § 160.15 [2] provides that:  "[a] person is guilty of
robbery in the first degree when he forcibly steals property and when, in the
course of the commission of the crime or immediate flight therefrom, he or
another participant in the crime is armed with a deadly weapon."  Penal Law §
160.15 [2].

        Penal Law § 160.15 [4] provides, in relevant part, that:  "[a]
person is guilty of robbery in the first degree when he forcibly steals
property and when, in the course of the commission of the crime or immediate
flight therefrom, he or another participant in the crime displays what appears
to be a pistol, revolver, rifle, shotgun, machine gun or other firearm."
Penal Law § 160.15[4].

[2]     Penal Law § 125.25 [3] provides, in relevant part, that: "[a]
person is guilty of murder in the second degree when acting either alone or
with one or more other persons, he commits or attempts to commit robbery . . .
and, in the course of and in furtherance of such crime or of immediate flight
therefrom, he, or another participant, if there be any, causes the death of a
person other than one of the participants."  Penal Law § 125.25 [3].

[3]     Under Penal Law § 20.00, "when one person engages in conduct which
constitutes an offense, another person is criminally liable for such conduct
when, acting with the mental culpability required for the commission thereof,
he solicits, requests, commands, importunes, or intentionally aids such person
to engage in such conduct."  Penal Law § 20.00.

attempted to rob him and during the attempted robbery, the gun went off, killing Javier. T.T. 384-391, 417-436.

To the extent that Petitioner calls upon this Court to make a determination that the state court's statutory interpretation of Penal Law § 20.00 was incorrect,[4] such a request is outside the purview of this Court. See Estelle v. McGuire, 502 U.S. 62, 67-8 (1991)("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

In any event, there is a view of legal sufficiency of the evidence that does not involve a determination of the limits of substantive New York law regarding accessorial liability. The record reflects that the jury was instructed, without objection, that it was "free to accept or reject in whole or in part the statement that was attributed to [Petitioner]." T.T. 575-576. Accordingly, the jury was free to disregard that part of Petitioner's statement that it was specifically Polanco (rather than Javier) who showed up at Thomas Street and that Petitioner intended Brooks to rob. Nothing in what Petitioner told Investigator Reinstein indicated that Brooks thought he robbed the wrong individual. Thus, the jury could have found, contrary to

---

[4] In denying Petitioner's trial order of dismissal motion -- in which Petitioner argued that there had to be legally sufficient evidence that Petitioner had specific intent to rob Javier (as opposed to Polanco) -- the court determined that, under the particular circumstances of this case, "the intent to commit the crime of robbery is what is controlling, not the specific person who happens to show up at the time." T.T. 469. The Fourth Department implicitly affirmed the trial court's decision on this issue in ruling that the evidence was legally sufficient to support Petitioner's conviction. See Harewood, 34 A.D.3d at 1254.

Petitioner's position, that he and Brooks shared a common intent to forcibly steal drugs or money from anyone connected with Polanco's drug operation who happened to show up at Thomas Street for purposes of recouping Petitioner's perceived loss from previous drug transactions.

Accordingly, the Court cannot find that the state court's adjudication of this claim contravened or unreasonably applied settled Supreme Court law. Habeas relief is therefore not available to Petitioner, and his claim that there was legally insufficient evidence to establish his guilt is dismissed.

**2.    Petitioner's Claim that the Trial Court Improperly Permitted the Prosecution to Change its Theory of Prosecution is Meritless**

Petitioner contends, as he did on direct appeal, that in denying his motion in limine and his motion for a trial order of dismissal, "the trial judge improperly permitted the prosecutor to change its theory of prosecution[,]" thereby violating his due process right to be provided with fair notice of the charges against him. Pet. ¶ 12, Ground Two; Mem./Br., Point II (unnumbered in original); Reply, 1-3. Specifically, he argues that the trial court permitted the prosecution to prove Petitioner planned to rob someone other than the individual named in the indictment (Javier). The Fourth Department rejected this claim on the merits, finding that "the rulings by County Court on various issues did not in effect allow the People to change their theory of the case during

trial." <u>Harewood</u>, 34 A.D.3d at 1254-55 (citations omitted). This claim is meritless.

In habeas petitions involving state court trials, the issue that should be determinative in every case is whether the petitioner had a fair trial. <u>See</u> <u>Smalls v. Batista</u>, 191 F.3d 272, 277 (2d Cir. 1999). A due process claim in a federal habeas petition alleging that a state prisoner was unable, based on lack of notice in the indictment, to adequately prepare his defense resulting in actual prejudice "is largely one of state law, subject only to the general fourteenth amendment guarantees of due process." <u>United States ex rel. Corozzo v. Attorney Gen. of State of N.Y.</u>, 475 F.Supp 707, 709 (E.D.N.Y. 1979) (citing <u>Peters v. Kiff</u>, 407 U.S. 493, 496 (1972) (the general Fourteenth Amendment guarantee of due process is the appropriate measure of grand jury indictments because the requirements of the Fifth Amendment have not been applied to the states)).

As applicable to the states, the Fourteenth Amendment's due process clause generally has been interpreted as requiring that "[a] defendant is entitled to fair notice of the charges against him." <u>Lanfranco v. Murray</u>, 313 F.3d 112, 119 (2d Cir. 2002) (habeas review of notice provided in a New York state court trial). The right of a state prisoner to receive "reasonable notice of the charges against him is incorporated in the fourteenth amendment and cannot be abridged by the states." <u>Hulstine v. Morris</u>, 819 F.2d

861, 863-64 (8th Cir. 1987) (in a federal habeas review of a state court conviction, due process requirements may be satisfied if the state prisoner receives "actual notice" of the charges, even if the indictment or information is deficient), cert. denied, 484 U.S. 1068 (1988). "The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at trial; and (2) that he may be protected against another prosecution for the same offense." United States v. Wozniak, 126 F.3d 105, 111 (2d Cir. 1997) (analysis under the Fifth Amendment of a federal indictment resulting in a drug-related conviction). While a constructive amendment of an indictment can violate the right to fair notice, "not all alterations of the indictment are unconstitutional." Id. at 109. A defendant must be given notice of the "core of criminality to be proven at trial," while permitting the prosecution significant flexibility in the nature of the proof adduced at trial. Id. at 110 (citing United States v. Patino, 962 F.2d 263, 266 (2d Cir. 1992)).

The record reflects that the theory of prosecution -- as reflected in the indictment, the prosecutor's opening argument, the trial evidence, and the jury instructions -- was consistent throughout Petitioner's trial. The prosecution theorized that

Petitioner was criminally liable as an accessory under substantive New York law for the conduct of co-defendant Brooks, who attempted to rob a man and that man died as a result of a gunshot fired by Brooks during the attempted robbery. The name of the man Brooks attempted to rob was Porfirio Javier, who was listed as such in the indictment. Nothing occurred during the trial –– neither the trial court's denial of Petitioner's motion in limine, nor the trial court's denial of Petitioner's motion for an order of dismissal –– that contradicted or in any way altered the prosecution's theory that Petitioner was criminally liable as an accessory for the conduct of Brooks. And as discussed at Section "IV, 1" sbove, the evidence at trial to prove such responsibility was legally sufficient.

Accordingly, the Court cannot find that the Fourth Department's determination of this claim contravened or unreasonably applied settled Supreme Court law. The claim is dismissed.

### 3. Petitioner's Ineffective Assistance of Trial Counsel Claim is Meritless

Petitioner argues that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel based on, *inter alia*, the following: (1) counsel's failure to move for a mistrial based on the allegedly "damaging" testimony of two prosecution witnesses who asserted their Fifth Amendment privileges on cross-examination; (2) counsel's decision to "open the door" to

testimony that had been previously precluded by a <u>Molineux</u> ruling; and (3) counsel's failure to call a witness to testify about the defendant's cell phone records. <u>See</u> Pet. ¶ 12, Ground Three; Mem./Br., Point III; Reply, 7. Petitioner raised this claim on direct appeal, and the Fourth Department rejected it on the merits, finding "that the evidence, the law and the circumstances of this case, viewed in totality and as of the time of this case, establish that defendant received meaningful representation." <u>Harewood</u>, 34 A.D.3d at 1255 (citation omitted).

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. <u>Id.</u> at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." <u>Id.</u> To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the

facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690.

The Court finds that Petitioner has failed to demonstrate that his counsel's conduct was deficient within the meaning of Strickland, and that, but for the deficiency, the result of his trial would likely have been different.

First, Petitioner argues that he received constitutionally ineffective assistance of counsel because counsel failed to move for a mistrial after two prosecution witnesses, Polanco and Delmus Holton ("Holton"), testified on direct examination, but then proceeded to assert their Fifth Amendment privileges on cross-examination. See Mem./Br., Point III, 30-36. The record reflects that, on direct examination, Polanco testified to the following: that he knew the victim and knew him to be a drug dealer; that he was with the victim from 7:00 p.m. to 8:30 p.m. on the night in question, during which time he was paged; that when he called back the number, he spoke to a person who identified himself as "Eddie"; that, believing that the numbers on the pager referred to a $700 debt that "Eddie" owed the victim, Polanco told Javier to go take care of the customer; that he told Javier he would wait there for the $100 that Javier was going to pay him; that Javier left for a short time and then returned; that Petitioner then pulled up in a car; that Javier went over to the car and then came back and asked

Polanco if anybody had "anything," which Polanco understood to mean "maybe drugs or something"; that, a short time later, everyone but Javier left the area. T.T. 301-310. On cross-examination, the trial court, after an off-the-record discussion with counsel, advised Polanco that he was probably going to be asked questions concerning the possession and sale of drugs and that he could consult with his attorney, who was present, regarding his Fifth Amendment rights before continuing his testimony. Polanco consulted with his attorney and invoked his Fifth Amendment right to remain silent on cross-examination. T.T. 311-315, 338-340.

The record reflects a similar scenario occurred when Holton was called to testify. On direct examination, Holton testified to the following: that he was at 133 Thomas Street on the night of the incident and that, at some point that evening, Petitioner, Brooks and Brown had a conversation in the kitchen which he could not hear, after which Petitioner and Brown left; that Brooks left an hour or two later; that he then heard a knock on his back door, but ignored it; that about fifteen minutes later, he looked out the front door and noticed a number of people outside; that he went outside and someone told him there was a dead body in the driveway; that, after seeing the body, he left; that, sometime thereafter, he went to Brooks' house where Brooks told him that what had happened was "messed up" and that "he didn't mean to do it"; and that Petitioner and Brown also came over to Brooks' house while he was

there, but both left before he did.  T.T. 316-326.  On cross-examination, and before Holton could answer any questions regarding whether he was selling drugs at Thomas Street at the end of August 2000, the trial court advised Holton of his Fifth Amendment right.  Holton then asserted his Fifth Amendment right to remain silent on cross-examination.  T.T. 316-326, 327-337.

Thereafter, the trial court, after consulting with both counsel and obtaining their consent, instructed the jury that no unfavorable inferences could be drawn against Petitioner by the witnesses' assertions of their Fifth Amendment rights, but may consider the assertion of the privilege as to each witness's credibility.  Neither counsel objected to the court's instruction.  T.T. 340-341, 356-358.  Before adjourning for the day, the trial court recited for the record that both counsel had consented to the procedure whereby the court would give the limiting instruction and allow counsel to reserve the right to be heard further regarding striking the witnesses' testimony.  At that point, defense counsel moved to strike the testimony of both Polanco and Holton.  That request was granted the following day and the trial judge instructed the jury then, and again later in his final charge, that the jury was to disregard totally the testimony of Polanco and Holton.  T.T. 356-362, 455-459, 557-558.

Under the facts and circumstances of this case, it was reasonable for Petitioner's counsel not to move for a mistrial.

"[F]or purposes of effective assistance, not every possible motion need be filed, but rather, only those having a solid foundation." United States v. Nersesian, 824 F.2d 1294, 1322 (2d Cir.) (citing United States v. Afflerbach, 754 F.2d 866, 870 (10th Cir.), cert. denied, 472 U.S. 1029 (1985)), cert. denied, 484 U.S. 958 (1987). Petitioner has failed to establish that such a foundation existed. Contrary to Petitioner's characterization of Polanco's and Holton's testimony, there was nothing particularly "damaging" about it. Mem./Br., Point III, 30. Petitioner argues, *inter alia*, that Polanco's testimony was "damaging" because Polanco "put Petitioner physically in the presence of the deceased shortly before his death." Id. at 31. There was no allegation, however, that it was Petitioner who did the actual shooting of Javier. Thus, Polanco's testimony that Petitioner was physically in the presence of Javier shortly before Javier's death did little in the way of incriminating Petitioner. Similarly, Holton's testimony was equally as innocuous. Again, Petitioner argues, *inter alia*, that Holton's testimony was "damaging" because it put Petitioner "in meetings with Will Brooks both before and after the shooting." Mem./Br., Point III at 33. Holton merely testified, however, that Petitioner, Brooks, and Brown had a brief conversation at 133 Thomas Street on the night of the incident; he did not testify to the substance or nature of that conversation. Moreover, Holton's testimony, overall, was not unlike the statements made by

prosecution witness Lewis, who testified that he saw Brooks and Petitioner together after the shooting.  To the extent that the testimony was detrimental to Petitioner's case, any resulting prejudice was cured by the trial court's striking of the testimony and its curative instruction to the jury regarding same. Therefore, given that the testimony of Polanco and Holton was fairly innocuous and because any prejudice resulting from it was cured by the court's striking of the testimony (at the request of defense counsel) and issuance of a curative instruction, the Court cannot find that counsel's failure to move for a mistrial constitutes constitutionally ineffective assistance as set forth in Strickland.  See e.g., Crandall v. Jubert, 9:07-CV-0891 (GTS/GHL), 2010 U.S. Dist. LEXIS 85805, *18-21 (N.D.N.Y. June 1, 2010) (finding that trial counsel's failure to move for a mistrial based on allegedly incriminating statement made by informant witness was not unreasonable where informant "vaguely stated" that he knew Petitioner from prior drug sales, where trial counsel's objection to statement was sustained, and where trial judge asked the jury to disregard and strike the comment);  Avincola v. Stinson, 60 F. Supp. 2d 133, 164 (S.D.N.Y. 1999) (finding that trial counsel's decision not to move for a mistrial was not unreasonable where alleged juror misconduct did not frustrate Petitioner's right to fair and impartial assessment of the facts by jury);  Muzio v. Scully, No. 88 CV 0059, 1990 U.S. Dist. LEXIS 18481, *11-12

(E.D.N.Y. Dec. 13, 1990) (finding no ineffective assistance of trial counsel based on trial counsel's failure to move for mistrial on ground that prosecutor acted improperly during cross-examination of petitioner where petitioner did not answer prosecutor's question and trial court gave curative instruction).

Next, Petitioner argues he received ineffective assistance of counsel based on counsel's decision to "open the door" to evidence that Petitioner was present in a house during the execution of a search warrant where a gun, drugs, and currency were found. See Mem./Br., 36-39. Prior to trial, defense counsel secured a ruling from the county court that the prosecutor was precluded from presenting evidence that Petitioner was arrested at the time the search warrant was executed at 6 Rodenbeck Place unless Petitioner "opened the door" to such evidence by challenging the voluntariness of Petitioner's statements to Investigator Reinstein made subsequent to his arrest. H.M. of 09/18/01 16-18. In his opening statement, defense counsel implied -- although without explicitly challenging the voluntariness of Petitioner's statements -- that Petitioner had come to the police on his own volition in order to assist the police. T.T. 211-212. The county court determined that defense counsel had, in effect, "opened the door" to the evidence that had been previously precluded by the court's Molineux ruling. T.T. 396-397. As a result, the People presented testimony that established that Petitioner was found in a house during a search

warrant execution in possession of a gun, $8,400, and drugs. T.T. 462. The prosecution's witness testified that Petitioner was taken into custody for this incident and later interviewed by Investigator Reinstein. T.T. 461-463. Petitioner cannot show that counsel's conduct, under the circumstances, was unreasonable. By choosing to reference Petitioner's statements to police and characterizing them as "voluntary" in nature, it is likely that defense counsel attempted to show Petitioner's lack of a guilty conscience by impressing upon the jury that Petitioner was anxious to assist the police with their investigation into the death of Javier. In doing so, Petitioner was portrayed in a positive light from the outset of the case. In any event, Petitioner cannot show that he was prejudiced by counsel's conduct insomuch as Petitioner's own statements established that he was a drug dealer and that he had provided a gun to Brooks. T.T. 417-436. Thus, the Court cannot find that there is a reasonable probability that the outcome of the proceeding would have been different had counsel not "opened the door" to the previously-precluded evidence.

Next, Petitioner claims that he was provided with constitutionally ineffective assistance of counsel because counsel failed to call a witness to testify about Petitioner's cell phone records. See Mem./Br., Point III, 42. This argument fails to the extent that Petitioner does not indicate what this witness would have testified to and/or how such testimony would have assisted his

defense; he merely asserts that the information was "obviously important" because defense counsel initially sought a stipulation from the People regarding the cell phone records. Id. Moreover, Petitioner has not shown that there is a reasonable probability that, but for counsel's alleged failure to call a witness to testify about Petitioner's phone records, the outcome of his trial would have been different.

Accordingly, the Court finds that the state court's determination of this claim was neither contrary to nor an unreasonable application of settled Supreme Court law and the claim is dismissed in its entirety.

## 4. Petitioner's Ineffective Assistance of Appellate Counsel Claim is Meritless

Petitioner argues that he was deprived of his Sixth Amendment right to the effective assistance of appellate counsel based on appellate counsel's failure to raise the following issues on direct appeal: (1) that the trial court erred in denying Petitioner's motion to set aside the verdict, pursuant to C.P.L. § 330; and (2) ineffective assistance of trial counsel based on alleged errors committed during the C.P.L. § 330 hearing. Petitioner raised this claim in his coram nobis application, which was summarily denied by the Fourth Department. See Harewood, 53 A.D.3d 1123. Summary denial of Petitioner's motion constitutes an adjudication on the merits of this claim. Sellen v. Kuhlman, 261 F.3d at 303, 311-12 (2d Cir. 2001).

As discussed in Section "IV, 3" above, in order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his attorney's representation was unreasonable under "prevailing professional norms," and that there is a reasonable probability that, but for his attorney's errors, "the result of the proceeding would have been different." Strickland, 466 U.S. at 688. This standard applies equally to trial and appellate counsel. See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994), cert. denied, 513 U.S. 820 (1994). A petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful. Id. at 533-34; Smith v. Robbins, 528 U.S. 259, 285 (2000). Moreover, counsel is not required to raise all colorable claims on appeal. See Jones v. Barnes, 463 U.S. 745, 751 (1983). Rather, counsel may winnow out weaker arguments and focus on one or two key claims that present "the most promising issues for review." Id. at 751-53. A petitioner may establish constitutionally inadequate performance if he shows that his appellate counsel omitted material and obvious issues while pursuing matters that were patently and significantly weaker. See Mayo, 13 F.3d at 533. As discussed below, Petitioner's claim is meritless.

First, Petitioner contends that appellate counsel rendered constitutionally ineffective assistance of counsel because she failed to raise the issue of the trial court's denial of Petitioner's motion to set aside the verdict. Specifically, he argues that the trial court erred in determining that the prosecution was unaware of certain exculpatory information, namely a statement made by Brown that Petitioner had instructed him to "call off" the robbery of Polanco before it occurred. See Mem./Br., Point IV, 45-53. The trial court determined, as a factual matter, that Petitioner had failed to meet his burden by proving by a preponderance of the evidence that the prosecutor was aware of the information from Brown that Petitioner had instructed him to terminate the robbery before it actually occurred. See Resp't App. B at 146.

In this case, the trial court's findings were based upon an extensive development of the record by means of a hearing involving the testimony of multiple witnesses, including the following individuals: Mark Funk, Esq. (Brown's attorney), who had engaged in pre-trial meetings with his client and the prosecutor; Assistant District Attorney Andrew Cruikshank, Esq. (the trial prosecutor); and Robert Napier, Esq. (Petitioner's trial attorney). The trial court's factual findings, including those regarding witness credibility, are entitled to a presumption of correctness which petitioner bears the burden of overcoming by clear and

convincing evidence. <u>See</u> 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parsad</u>, 337 F.3d at 181; <u>Nelson v. Walker</u>, 121 F.3d 828, 833-34 (2d Cir. 1997). Petitioner has failed to make such a showing. As such, the record does not support a determination that appellate counsel rendered constitutionally ineffective assistance in failing to raise this issue on direct appeal.

Next, Petitioner faults appellate counsel for failing to raise an ineffective assistance of trial counsel claim based on alleged errors committed by counsel during the C.P.L. § 330 hearing. In particular, he argues that counsel's testifying at the hearing created a conflict of interest, which resulted in counsel's inability to call Brown. <u>See</u> Mem./Br., Point IV, 50-54. Initially, the Court notes that Petitioner does not argue that this issue, by itself, is meritorious, such that appellate counsel provided constitutionally ineffective assistance in failing to raise it on direct appeal. <u>Id.</u> at 45, 53. Rather, he contends that the ineffective assistance of trial counsel claim raised by appellate counsel on direct appeal would have been strengthened by the inclusion of this additional ground. <u>Id</u> at 53. He appears to suggest that the inclusion of this additional ground would have "tipped the scales" in his favor. The Court finds this argument unconvincing given that he is unable to make out a successful ineffective assistance of trial counsel claim on any of the grounds underlying his ineffective assistance of counsel claim (see Section

"IV, 3" above). In any event, Petitioner's claim is meritless. To prevail on a conflict of interest claim, petitioner must show that an "actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 349-50 (1980); United States v. Levy, 25 F.3d 146, 157 (2d Cir. 1994); see Smith v. Robbins, 528 U.S. 259, 285 (2000). An actual conflict of interest exists when the attorney's and defendant's interests "diverge with respect to a material factual or legal issue or to a course of action." Cuyler, 446 U.S. at 356 n.3. In his pleadings, Petitioner argues that "[d]uring his testimony, defense counsel was called upon to make admissions concerning his knowledge of the existence of Brady material and also to explain his failure to call Brown as a witness at trial. Such questioning placed counsel in the position of defending himself, at the possible expense of his client." Mem./Br., Point IV, 51. Such a complaint, phrased as a possibility rather than an actuality, falls far short of a showing that any actual conflict of interest existed. In any event, even assuming that such a conflict did exist, Petitioner cannot show that the claimed conflict "adversely affected" counsel's performance. Petitioner argues that counsel's decision not call Brown to testify was prompted by the alleged conflict. Mem./Br., Point IV, 51. However, the record reflects that defense counsel was called, unexpectedly, as a witness by the prosecutor after the defense had rested on the motion. Hr'g Mins. 44-45. And, given

the evidence presented at the hearing, which established that Brown had changed his version of the conversations between himself and the prosecutor at various times, it was certainly a reasonable, strategic decision not to have called Brown to testify. Hr'g. Mins. 14, 19, 32, 36-37, 41-42. Thus, Petitioner cannot show that appellate counsel was ineffective for failing to raise this non-meritorious issue on direct appeal.

Accordingly, the Court finds that the state court's determination of this issue was neither contrary to nor an unreasonable application of settled Supreme Court law, and the claim is dismissed in its entirety.

## V. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**


S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:      December 9, 2010
            Rochester, New York